275 S.E.2d 888 (1981)
MAYOR AND MEMBERS OF the CITY COUNCIL OF the CITY OF LEXINGTON
v.
INDUSTRIAL DEVELOPMENT AUTHORITY OF ROCKBRIDGE COUNTY.
Record No. 800457.
Supreme Court of Virginia.
March 6, 1981.
William O. Roberts, Jr., Lexington, for appellant.
Alfred L. Shilling, Richmond (Bernard J. Natkin, Patrick K. Arey, Bonnie M. France;
*889 Ganas & Natkin, Lexington, McGuire, Woods & Battle, Richmond, on brief), for appellee.
Before HARRISON, COCHRAN, POFF, COMPTON and THOMPSON, JJ.[*]
HARRISON, Justice.
The threshold question here is whether under Virginia's Industrial Development and Revenue Bond Act (Act), Code §§ 15.1-1373 to -91, the Industrial Development Authority of Rockbridge County (Authority) may issue bonds to finance the construction and equipping of a retail sales facility. We must also determine whether the Authority may bring this proceeding to validate such bonds under Virginia's Public Finance Act, Code §§ 15.1-170 to -227.
The Authority was created in 1967 by the Board of Supervisors of Rockbridge County pursuant to the provisions of the Act and has operated continuously since that time. On December 5, 1979, the Authority adopted a resolution for the issuance of industrial development revenue bonds to pay the costs incident to acquiring, constructing, and equipping a retail sales facility in Rockbridge County to be operated under the name of "K Mart". This facility was to be leased or sold to Joseph J. Harding, III, or Joseph J. Harding, Inc. Thereafter the Authority filed a motion for judgment in this validation proceeding pursuant to Code § 15.1-214. The court below, by decree entered March 12, 1980, determined that all proceedings taken by the Authority were legal and valid and that the project constituted an "authority facility" as defined in the Act. The decree authorized the issuance of the bonds and declared that the bonds would be valid, legal, and binding limited obligations of the Authority. This is an appeal from that decree.
In Chesapeake Devel. Authority v. Suthers, 208 Va. 51, 155 S.E.2d 326 (1967), we determined that the Act was constitutional and that the Authority is a separate and distinct legal entity established to perform the public purposes designated by the legislature. In Development Authority v. Coyner, 207 Va. 351, 358, 150 S.E.2d 87, 94 (1966), we held that the Act is designed to induce new industries to locate in the Commonwealth and thereby "serves primarily a public purpose and thus constitutes a proper function of government." In I.D.A. v. LaFrance Cleaners, 216 Va. 277, 281, 217 S.E.2d 879, 883 (1975), we noted that an Authority created pursuant to the provisions of the Act is a political subdivision, stating that the Authority is "`a body politic and corporate ... with such public and corporate powers as are' delegated in the Act.... Such powers are legislative powers and their exercise [by the Authority] is a legislative function."
The intent of the General Assembly and its purpose in creating the Act in 1966 are clearly set forth in Code § 15.1-1375 which, in pertinent part, provides:
It is the intent of the legislature by the passage of this chapter to authorize the creation of industrial development authorities by the several municipalities in this Commonwealth so that such authorities may acquire, own, lease, and dispose of properties to the end that such authorities may be able to promote industry and development trade by inducing manufacturing, industrial, governmental and commercial enterprises and institutions of higher education to locate in or remain in this Commonwealth and further the use of its agricultural products and natural resources, and to vest such authorities with all powers that may be necessary to enable them to accomplish such purposes, which powers shall be exercised for the benefit of the inhabitants of the Commonwealth, either through the increase of their commerce, or through the promotion of their safety, health, welfare, convenience or prosperity....
In LaFrance Cleaners, supra, we held that Code § 15.1-1375 declares that "the powers conferred may be exercised only if a public purpose is promoted" and that *890 "[e]ach of the several `elements' recited ... is an indicium of a public purpose." 216 Va. at 280, 217 S.E.2d at 882. We said that in order to effectuate the obvious intention of the legislature, the conjunctive words of the statute may be construed as disjunctive.
The first issue here is whether a retail facility is a "commercial enterprise" within the purview of Code § 15.1-1375. In Code § 15.1-1374(j) "enterprise" is defined to mean "any industry for the manufacturing, processing, assembling, storing, warehousing, distributing, or selling any products of agriculture, mining, or industry ... or for such other businesses as will be in the furtherance of the public purposes of this chapter...."
To determine the "public purpose" of the Act we refer again to Code § 15.1-1375. There, the General Assembly stated that its intent in creating authorities was to promote industry and to develop trade by inducing commercial enterprises to locate and remain in Virginia and to further the use of the state's agricultural products and natural resources. The legislature vested the Authority with all powers necessary to accomplish this purpose with the admonition that the powers are to be exercised for the benefit of the inhabitants of the state through increase of the state's commerce or through the promotion of safety, health, welfare, convenience, and prosperity. Significantly, it further directed that the Act should be liberally construed to promote these expressed intentions.
We must give the Act a rational construction consistent with its purposes and not one which will substantially defeat its objectives. Norfolk So. Ry. Co. v. Lassiter, 193 Va. 360, 68 S.E.2d 641 (1952). The Act was designed to stimulate the economy of Virginia, thereby providing jobs, increasing business activity, and broadening the state's tax base. Appellant argues that the financing of private projects with industrial development authority revenue bonds often gives a competitive advantage to the developer involved. It further argues that such bonds unfairly compete in the market place with true municipal bonds issued to finance legitimate public improvements. While these arguments may have merit, they would more properly be addressed to the legislative body. The General Assembly has rejected these arguments and determined that this type authority is necessary to promote the economy of the Commonwealth, and enable it to compete with other states which utilize this "tool" to attract industry and promote their economic growth. Commerce involves the buying, selling, and exchange of goods and commodities. The General Assembly seeks to promote industry and develop trade by inducing commercial enterprises to locate in the state and process, assemble, store, warehouse, or sell products of agriculture, mining, or industry here. The primary function and mission of a retail store is to buy, assemble, store, and sell products derived from agriculture, mining, and industry. It should be noted that the word "enterprise" as defined by Code § 15.1-1374(j) includes "such other businesses" as will further the public purposes set forth in Code § 15.1-1375.
We further note that the terms "industry" and "industrial", as used in the Act, do not apply to manufacturing plants, garment factories, or processing mills alone. The terms also apply to commercial enterprises engaged in selling and supplying goods. In Weatherford v. Arter, 135 W.Va. 391, 395, 63 S.E.2d 572, 574 (1951), it was said that "the term `industry', in its common or ordinary sense, means any ... business conducted for a livelihood or for profit and it applies especially to a distinct branch of trade in which labor and capital are extensively employed." In Opinion of the Justices to the House of Representatives, 373 Mass. 873, 875-76, 366 N.E.2d 1230, 1231-32 (1977), the court defined industry as "a generic term which may be applied readily to activities which are not confined to the process of fabricating new products from raw materials."
We are directed to construe the Act liberally, to the end that its stated purposes be accomplished. We hold that a retail facility is a commercial enterprise within the meaning of Code § 15.1-1375.
*891 We find no merit in appellant's assignment which questions the right of the Authority to maintain this proceeding under Virginia's Public Finance Act. The Authority is a political subdivision of the Commonwealth of Virginia, and its governing body brought this proceeding to establish the validity of the bonds it proposed to issue. Code § 15.1-214 authorizes such an action. It reads, in pertinent part, as follows:
The governing body of any political subdivision proposing to issue bonds may bring at any time a proceeding in any court of the county or city having general jurisdiction and in which such political subdivision is located to establish the validity of such bonds, the legality of all proceedings theretofore taken in connection with the authorization or issuance of such bonds and the validity of the tax or other means provided for the payment of such bonds, and the validity of all pledges of revenues and of all covenants and provisions which constitute a part of the contract between such political subdivisions and the holders of such bonds.
We must assume that when the General Assembly enacted Code § 15.1-1376 in 1966 (Acts 1966, c. 651), it was cognizant of its previous action in enacting Code § 15.1-214 (Acts 1962, c. 623), which provided the procedure to be followed by the governing body of a political subdivision in establishing the validity of bonds it proposed to issue.
Appellant argues that Code § 15.1-214 applies only to a Board of Supervisors, Council, or other legislative body or authority having charge of the finances of any county, city, or town. It maintains that had the General Assembly intended these sections to apply to other bond issues it would have amended Code §§ 15.1-213 to -214 at the time the Industrial Development Bond Act was enacted. We disagree.
When the General Assembly made industrial development authorities political subdivisions of the Commonwealth, it thereby brought them within the purview of Code § 15.1-214. Most certainly the legislature did not intend that there be no statutory proceeding under which revenue bonds could be validated or their issuance contested. It did not specifically provide for such validation in the Act for the reason that the language of Code § 15.1-214 clearly applies to all political subdivisions and is not restricted to political subdivisions that have taxing powers.
While the issue was not specifically raised, we tacitly approved the applicability of Code § 15.1-216 as a vehicle for the judicial determination of the validity of industrial development bond issues in I.D.A. v. LaFrance Cleaners, supra. That case involved the challenge by a private cleaning establishment to the issuance of IDA bonds for the purpose of financing the construction and equipping of a laundry. The plaintiff there filed a petition to enjoin the issuance of the bonds. The trial court directed that the petition be treated as a motion for judgment contesting the issuance of bonds under Code § 15.1-216. The case proceeded and resulted in the entry by this court of final judgment validating the bond issue.
We find no error in the action by the court below in exercising jurisdiction over this proceeding and in deciding that the Industrial Development Authority of Rockbridge County may issue revenue bonds to finance the retail sales facility.
Affirmed.
NOTES
[*] Chief Justice I'Anson presided at the oral argument of this case but retired on January 31, 1981.