## CIRCUIT COURT OF FREDERICK COUNTY

Lee Jackson Motel, Inc., et al.

v.

Industrial Development Authority
of Frederick County et al.

Case No. (Law) 4157

By JUDGE ROBERT K. WOLTZ

August 16, 1983

This opinion letter is in resolution of the question of the validity both as to procedure and substance of a proposed eight million dollar revenue bond issue by the I.D.A. of Frederick County (the Authority) under the Industrial Development and Revenue Bond Act, Code Sections 15.1-1373, *et seq.*, for the benefit of Interstate Properties Limited Partnership (the Partnership).

The Partnership made application to the Authority along with a presentation by one of its members in support of approval of the bond issue. The Authority by resolution approved the issue describing the project as "a motel and restaurant facility," which resolution was later corrected to describe it as "a motel and office complex."

Under the Public Finance Act, Code §§ 15.1-171, *et seq.*, the plaintiffs (one was later granted leave to withdraw as such) in pursuance of § 15.1-216 timely filed motion for judgment to contest the issuance of the bonds. The Authority filed its response and the Partnership intervened by leave of Court pursuant to Section 15.1-217. As embodied in the motion for judgment the plaintiffs contest the issue on essentially three grounds:

(1) The Authority did not comply with The Virginia Freedom of Information Act, Code § 2.1-340, *et seq.*, in that the Authority in adopting the resolution authorizing the bonds did not reconvene in open meeting to take a vote of its membership on the resolution.

(2) The Authority before acting considered only the application and representation of the Partnership and failed to consider other evidence which might have been available and contrary to the claimed feasibility of the project and the advisability of approving the bond issue.

(3) The Authority exceeded its powers under the Industrial Revenue and Bond Act, the proposed bond issue is not authorized by the Act and the project for which the issue is to be made is not an "authority facility" under it. These three bases of attack are actually three facets of plaintiffs' essential claim, namely, that the Authority in approving the issuance of these particular bonds exceeded the scope of the purposes and powers contained in the Act.

The first contention is quickly disposed of. An industrial development authority is not exempt from The Virginia Freedom of Information Act, Code Sections 2.1-340, *et seq.* § 2.1-345(c) provides that no resolution and certain other actions taken by specified public bodies in executive meeting shall be effective unless after that meeting the body reconvenes in open meeting for the membership to vote on the resolution or action. The burden is on the plaintiffs to show the resolution of the Authority approving issuance of the bonds was adopted in executive session without subsequent adoption in open meeting. No evidence, documentary or otherwise, was introduced to show the resolution was ever adopted in executive meeting or adopted other than in open meeting.

As to the second point, the plaintiffs claim that the Authority did not investigate and explore sufficiently the facts of the proposed project before taking action. Decision on that issue rests on the nature of the latter's character as a public body. In its nature an industrial development authority is a legislative body. *I.D.A. v. La France Cleaners*, 216 Va. 277 (1975). In applying that holding to industrial development authorities, the Court said:

Such powers are legislative powers and their exercise is a legislative function. It follows that the applicable standards of judicial review of the action of an "Authority" is that applied to legislative actions. A court must uphold a legislative action if, in the face of evidence of unreasonableness, ". . .. evidence of reasonableness is sufficient to make the question fairly debatable." [Citations omitted.]

The plaintiffs maintain that the authority considered only presentations made by the applicant Partnership and failed to consider other information and evidence contrary to that of the applicant, had no public hearing and made no solicitation of contrary views. In the absence of some legal requirement, there is no necessity that a legislative body do so. As stated in *La France* at page 282:

Although legislative bodies sometimes choose to conduct hearings and investigations in aid of legislation, they do not always do so, and absent a constitutional or statutory mandate they are not obligated to do so. " 'Courts are not concerned with the motives which actuate members of a legislative body in enacting a law. . .' " [citation omitted] and, in the exercise of its legislative discretion, a legislative body is presumed to have been cognizant at the time it acted of all existing facts and circumstances bearing upon the public policy and private rights relating to their action. [Citations omitted.]

Though it may have been wise public policy for the General Assembly in delegating legislative powers to industrial development authorities to have required as a preliminary to taking action the giving of public notice, public hearings, specific investigation of contrary views or even the use of a Devil's Advocate, yet in the original Act and the numerous amendments to it the Assembly has failed to establish any of those prerequisites.

At least by implication these alleged shortcomings on the part of the Authority raised by the plaintiffs bring in to play the concept of "reasonableness" in judi-

cial determination of the validity of legislative actions. As explicated in *La France*, the standard for judicial assessment of "reasonableness" is not by resort to what the legislative body had before it when it acted "but to what it could have known at that time," and the case continues:

> Accordingly, we hold that a court reviewing a legislative action must consider all competent evidence adduced at trial concerning facts and circumstances existing at the time the legislative action was taken; if evidence of such facts and circumstances is sufficient to make the reasonableness of the legislative action "fairly debatable," the court must uphold that action; and whether deliberate or innocent, misrepresentation of facts and circumstances made before a legislative body will not invalidate legislative action if the evidence shows that any facts and circumstances existing at the time it was taken were sufficient to sustain it. [Footnote and citations omitted.]

On that basis in considering the evidence introduced, the Court comes to the conclusion that the reasonableness of the Authority's action was at least "fairly debatable," so its action from that standpoint must be sustained. In that phase of the case much of the evidence of the plaintiffs dealt particularly with the motel part of the proposed project. Evidence was introduced as to the number of motel rooms already available in the immediate area, rate of occupancy of those rooms, comparative occupancy rates regionally and nationally. The burden of much of this evidence was to show unfavorable competitive effects of the proposed motel on existing ones. The Authority "is presumed to have been cognizant at the time it acted" of that factor on "the public policies and private rights" stemming from its approval of this bond issue, and "economic impact on existing industries is only one factor bearing upon the reasonableness of an industrial development project." *La France*, at page 283.

The third issue in this case is whether under the Act the proposed project qualifies for the issuance of industrial development authority bonds in aid of it.

The present Act was preceded by one of more local application, 1964 Acts, c. 643, decided as to its constitutionality in *Fairfax County I.D.A. v. Coyner*, 207 Va. 351 (1966), and the constitutionality of the present Act was upheld in *Chesapeake Development Authority v. Suthers*, 208 Va. 51 (1967). The original Act of 1966 has since that time "grown like Topsy," and as is usual in such instances its provisions are not always the most concise or well ordered. Its provisions are broadly framed. As a matter of significant legislative history, its amendments over the years so far as they relate to its applicability have been ones of expansion rather than contraction, excepting the proviso in the 1983 amendment which added (vi) to subsection (d) of § 15.1-1374.

Paramount here is the fact that the General Assembly itself in precise language has provided for the standard of construction to be applied to the broad intentions expressed: "This chapter shall be liberally construed in conformance with these intentions." § 15.1-1375 The legislative mandated liberality of construction has been judicially recognized, applied and emphasized in *Mayor of Lexington v. I.D.A.*, 221 Va. 865, 869 (1981), and affirmed by reference to that case in *Farmer's Foods v. I.D.A.*, 221 Va. 880 (1981).

The purpose of the Act as expressed in Section 15.1-1375 is:

> [T]o promote industry and develop trade by inducing manufacturing, industrial, governmental and *commercial* enterprises. . . to locate in or remain in this Commonwealth and further the use of its agricultural products and natural resources, and. . . to enable [industrial development authorities] to accomplish such purposes, which power shall be exercised for the benefit of the inhabitants of the Commonwealth, either through the *increase of their commerce*, or through the promotion of their safety, health, welfare, convenience or prosperity. [Emphasis added.]

In both *Mayor of Lexington* and *Farmer's Foods*, industrial development revenue bond issues for retail establishments were approved. In the former case the Supreme Court laid emphasis on the fact that retail establishments

dealt in buying and selling goods. It pointed out that "industry" and "industrial" appearing in the Act are not limited to manufacturing plants and the like and that the Act in defining "enterprise," Section 15.1-1374(j), refers to " 'such other business' as will further the public purposes" found in Section 15.1-1375.

The plaintiffs lay emphasis on the fact that *Mayor of Lexington* places much weight on the concept of buying and selling goods in determining whether retail establishments were commercial enterprises and made no reference to supplying and selling services. That Court's holding that establishments dealing in goods constituted commercial enterprises permissible under the Act was to face the specific fact situation presented. It is not exclusive, especially since it was no so stated in the opinion, of enterprises selling services, as in the case of a motel, or supplying a service to other industrial, commercial, governmental, educational or medical enterprises mentioned in the Act, such as office buildings. However, in the leading case of *La France*, authority revenue bonds for establishment of a laundry which supplied laundry services to various medical facilities was upheld as being validly within the purview of the Act.

If "commerce" and enterprises of a commercial nature were to be excluded from the application of the Act, a vast area of activity stimulative of the economy of the Commonwealth, helpful in maintenance or increase in the employment of her people and increase in her tax base, all of which are to the "benefit" of her inhabitants and their "prosperity," which two objectives form important bases for the Authority to exercise its powers, Section 15.1-1375, could not qualify under it.

When legislation by its own terms is subject to liberal construction considerable heat but little light is generated by making fine distinctions between "industry" and "commerce," or commercial activities which supply goods as opposed to those supplying services. The laundry in *La France* from one perspective could be viewed as an industry but its commercial purpose was to supply a service. Whatever disagreements the plaintiffs may have with the public policy of the Act, that policy has been established by the Legislature for broadly stated purposes. Liberal construction is enjoined in its application in furtherance of its objectives. To say that a motel which serves the tourist trade and those in the process of

travel on business, commercial and industrial missions is not a contemplated commercial enterprise because the sale of goods as not necessarily involved is to draw a distinction without a difference so far as the express legislative purpose is concerned.

By reasonable extension there is in the purview of the legislation no disqualifying distinction between other qualifying enterprises and one which contemplates the housing of offices for those other enterprises. In fact subsection (d)(iii) of § 15.1-1374 mentions a particular type of "offices or operations centers." The broad expanse of this legislation liberally construed seems to this Court to swallow up the distinctions pointed out by the plaintiffs and reduce them more to semantic than legal significance.

In its memorandum the Authority lists numerous instances in which circuit courts have validated bond issues for the purpose of establishing hotels or motels and office buildings. Since those judicial validations no action has been taken by the General Assembly to eliminate or restrict financing of those facilities under the Act. Even without "facilities for commercial enterprises" being included by recent amendment, 1983 Acts, c. 514, Section 15.1-1374(d)(vi) in the definition of "authority facilities" or "facilities," the trial courts have found facilities of the types here under consideration to fall within the class of projects for which industrial bonds may validly be issued. Nor has the Supreme Court without benefit of that additional definitional item found difficulty in upholding such issues for ventures more strictly commercial than industrial in nature. The key in those instances is liberal construction to attain the purposes of the Act. In view of the judicial interpretations the Legislature's 1983 inclusion of "facilities for commercial enterprises" in the definition of "authority facility" amounts almost to a redundancy except for the proviso contained which eliminates or limits the use of industrial development bond issues in certain specified enterprises of that nature.

Finally, during the pendency of this litigation the Partnership to meet the exigencies of time relating to exercise of option to purchase the real estate on which to locate the facilities, through private financing acquired the property and commenced construction of the facility. The plaintiffs subsequently sought to

have the proposed bond issue declared invalid because the Partnership could no longer be induced thereby "to locate in" the Commonwealth under the provisions of Section 15.1-1375. This argument overlooks the fact that the action of the Authority in approving the bond issue initially induced the Partnership to locate the proposed facilities in the Commonwealth. It was the litigation instituted by the plaintiffs that brought about the necessity for the interim financing, and further the prospect of such bond issue being validated contributes materially to inducing the Partnership "to remain in" the Commonwealth. *Compare Chesapeake Development Authority v. Suthers, supra* at page 59.

For the foregoing the contemplated facilities do constitute facilities under the Act properly financable thereunder, and the procedures followed and actions taken by the Authority in furtherance of the bond issue are sustained against the attack made.

October 3, 1983

This opinion letter is supplemental to that rendered in this case August 16, 1983. Afterwards further argument resulted from the plaintiffs' assertion the Court in its first opinion covered two points raised by them only by implication, obliquely or not at all.

The first point is that action of the Authority in authorizing the bond issue was invalid for failure to comply with § 2.1-344(c) appearing in the Freedom of Information Act. That section as a whole deals with executive or closed meetings. Subsection (c) provides that no resolution or the like adopted in executive meeting shall:

> become effective unless the public body. . . reconvenes in open meeting and takes a vote of the membership on the resolution. . . Nothing in this section shall be construed to require the board of directors of any [industrial development] authority to identify a business or industry to which subsection (a)(4) of this section applies. However, such business or industry must be identified as a matter of public record at least thirty days prior to

the actual date of the board's authorization of the sale or issuance of such bonds.

Subsection (a)(4) of § 2.1-344 permits executive meetings for "discussion concerning a prospective business or industry when no previous announcement has been made of the business' or industry's interest in locating in the community."

As noted in the original opinion, there was no evidence that the Authority adopted the inducement resolution in other than an open meeting. The final sentence of subsection (c) requiring identification "as a matter of public record" thirty days prior to authorization of the bond issue refers to "such business or industry," i.e., the business or industry the identity of which was not known because discussion of it took place in an executive meeting. Here there was no discussion or action in executive meeting and hence, there was no "such business or industry" whose identity is required to be made on the public record thirty days prior to "authorization of the sale or issuance of such bonds," or to which subsection (a)(4) could apply.

Further, the identity of the business has been a matter of public record for months and the evidence does not disclose that "authorization of sale or issuance" has yet taken place.

Now to the second point the plaintiffs say was not resolved by the original opinion, the tract to be purchased is not reasonably necessary for the project described in the application to the Authority.

The intervening Partnership as part of its application filed "A Brief Overview" which set forth that it had a contract to purchase a twelve-acre tract at a named price, that as a first step three parcels of this tract would be sold and on the remainder of the tract a motel and office complex were to be constructed. The second or corrected inducement resolution of the Authority defined the project as "a motel and office complex." Later in the overview the Partnership indicated sources of financing for "the enterprise," namely, capital of the partnership, proceeds from the sale of the three parcels mentioned above and Authority bonds.

The Partnership's description of the proposed project and its description in the inducement resolution make the identity of the project to which the issuance of

bonds relates clear. It is obvious that the entire tract was not necessary for the particular project as portions of it were to be sold off to help finance the project. This does not mean that the bonds in this case could not be validly issued. It is not unusual for a purchaser to be faced with the necessity of buying a piece of land larger than he needs in order to get a smaller area necessary to his purposes. If plaintiffs' contention were correct, then no project involving the purchase of real estate could qualify under the Act unless the square area of the real estate was no greater than the precise amount needed to carry out the proposed project.

Plaintiffs' concern may be that because the Partnership intends to buy land in excess of the needs of its project the proceeds of the bonds may be devoted to some purpose other than those of the project. This overlooks a fair presumption from usual and ordinary business practices that the Authority's resolution authorizing sale and issuance of the bonds, conditions contained in the bonds and related documents and fiscal controls on the disbursal of bond proceeds, will be designed to prevent diversion of those proceeds for any purpose other than the described project. The Court is constrained to indulge this reasonable presumption, especially where public bonds are involved, else the proceeds from any issue might be devoted to unauthorized purposes.

In summary, the procedure used in this case was not in contravention of the Freedom of Information Act, and under the circumstances here the size of the real estate involved being excessive to the needs of the project will not invalidate the proposed issue.