Nathanael B. Habel, et al.

v.

Industrial Development Authority of the
City of Lynchburg

Record No. 900482

Lewis T. Stoneburner, guardian ad litem, etc.

v.

Industrial Development Authority of the
City of Lynchburg

Record No. 900498

January 11, 1991

Present: All the Justices

*Benjamin T. Riddles, II (Vivian Katsantonis; Watt, Tieder, Killian & Hoffar,* on brief), for appellants. (Record No. 900482)

*John E. Hubbard (Michael G. Connery; Theodore J. Craddock; Kutak, Rock & Campbell; Caskie & Frost,* on brief), for appellee. (Record No. 900482)

*Lewis T. Stoneburner (E. Olen Culler; Thomas J. Schilling; Press, Culler, Jones, Waechter & Stoneburner,* on brief), for appellant. (Record No. 900498)

John E. Hubbard (Michael G. Connery; Theodore J. Craddock; Kutak, Rock & Campbell; Caskie & Frost), on brief), for appellee. (Record No. 900498)

JUSTICE WHITING delivered the opinion of the Court.

In this proceeding to validate a political subdivision's proposed bond issue to benefit an educational institution, the principal inquiry is whether the bond issue would violate the Establishment of Religion Clause of either the United States or Virginia Constitution. To decide this issue, we must consider whether the educational institution's activities are "pervasively sectarian."

In October 1989, "as a prerequisite to obtaining federal tax exemption for the interest paid" on the proposed bonds, Code § 15.1-1378.1, the Industrial Development Authority of the City of Lynchburg (IDA) and the Lynchburg City Council held public hearings and thereafter approved the issuance of not more than $60,000,000 in Educational Facilities Revenue Bonds (the bonds). This bond issue would enable Liberty University (Liberty) to acquire and construct academic and administrative facilities in the City of Lynchburg.

On October 30, 1989, pursuant to the provisions of Code § 15.1-214, IDA filed this judicial proceeding against "the taxpayers, property owners and citizens" of Lynchburg to establish the validity of the proposed bond issue. Richard D. Thompson, guardian *ad litem* for interested and affected parties who might be under disability, together with three of those defendants, Nathanael B. Habel, Jeff D. Somers, and N. Haynie Kabler (collectively taxpayers), opposed the bond validation.

On April 5, 1990, after extended hearings and argument, the trial court validated the proposed bond issue, as provided by Code § 15.1-220. The taxpayers and the guardian *ad litem* appeal.[1]

Liberty is a church-related, accredited, nonprofit, private university. In October 1989, its faculty and student handbooks contained a number of statements setting forth what Liberty required of its faculty and students.[2] Among the requirements were adherence to a detailed and specific religious doctrine and compulsory

---

[1] Richard D. Thompson resigned as guardian *ad litem*, and Lewis T. Stoneburner was appointed in Thompson's place.

[2] Pertinent excerpts from the faculty and student handbooks are set forth in an appendix to this opinion.

attendance at six weekly religious services. Three of these services were chapel services held at Liberty, and three were church services of Thomas Road Baptist Church, the local church that was primarily responsible for founding Liberty.

Faculty members were obligated to conform to Liberty's doctrinal statements in teaching their courses and in publishing articles in their respective academic fields. Students were required to participate in "Christian Service" projects each term and to attend weekly dormitory prayer meetings conducted and supervised by an elaborate system of "prayer leaders" and "spiritual life directors," comprised of 604 of approximately 1,600 dormitory students. There were other references to religious requirements and activities in these handbooks and in other Liberty documents.

On November 21, 1989, after IDA and the city council approved the proposed bond issue, Liberty's trustees directed the deletion and amendment of a number of its religious requirements and statements.

■ First, we must decide which group of Liberty's policies is to be considered in our decision—those in effect in October 1989 when IDA and Lynchburg City Council approved the bond issue, or those in effect in 1990 when the trial court heard this matter. Because an industrial authority's decision to issue bonds under the Industrial Revenue Act is a legislative act, *Industrial Dev. Auth. of Richmond* v. *La France Cleaners and Laundry Corp.*, 216 Va. 277, 281, 217 S.E.2d 879, 883 (1975), we "consider all competent evidence adduced at trial concerning facts and circumstances existing *at the time* the legislative action was taken." *Id.* at 282, 217 S.E.2d at 883 (emphasis added). Therefore, we must decide whether the evidence supports the trial court's decision in light of Liberty's statements of its purposes and policies in effect in October 1989.

■ Issuance of the proposed bonds would involve a governmental act because IDA is a political subdivision of the Commonwealth of Virginia. *Mayor of Lexington* v. *Industrial Dev. Auth. of Rockbridge County*, 221 Va. 865, 870, 275 S.E.2d 888, 891 (1981). Accordingly, we must determine whether, as contended by the taxpayers and the guardian *ad litem*, the proposed bond issue would violate the Establishment of Religion Clause of either the United States or Virginia Constitution by impermissibly involving the government in the support of a sectarian religious activity.

■ Article I, § 16 of the Constitution of Virginia provides in pertinent part that "[T]he General Assembly of Virginia shall not . . . confer any peculiar privileges or advantages on any sect or denomination." We have not had occasion to construe this article in the context of the issues raised in this case. However, we find the Supreme Court's construction of the Establishment of Religion Clause of the First Amendment, "Congress shall make no law respecting the establishment of religion," helpful and persuasive in this case in construing the analogous state constitutional provision.

■ The Supreme Court has suggested application of a three-pronged guide to decide whether a particular statute, as written or as applied, would pass muster under the First Amendment in the face of a challenge such as that mounted in this case. "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster 'an excessive government entanglement with religion.' " *Lemon* v. *Kurtzman*, 403 U.S. 602, 612-13 (1971) (citations omitted).

Here, we consider whether the bond issue would have the "principal or primary effect" of advancing religion. Governmental "[a]id normally may be thought to have a primary effect of advancing religion when it flows to an institution in which religion is so pervasive that a substantial portion of its functions are subsumed in the religious mission." *Hunt* v. *McNair*, 413 U.S. 734, 743 (1973).

■ The Supreme Court has sustained similar financing arrangements for other church-related colleges. *Hunt* v. *McNair*, 413 U.S. 734 (1973); *Tilton* v. *Richardson*, 403 U.S. 672 (1971). In *Hunt*, however, the Court noted that the church-related college imposed no religious qualifications for faculty membership or student admission. 413 U.S. at 743-44. In *Tilton*, the Court observed that none of the involved church-related colleges compelled attendance at religious services and that the colleges subscribed to a set of well-established principles of academic freedom. 403 U.S. at 686-87.

In *Roemer* v. *Board of Pub. Works of Md.*, 426 U.S. 736 (1976), the Court considered the application of a statute that provided for state grants to private colleges, including church-related colleges. There, four church-related colleges were held eligible for the grants where the evidence showed that attendance at their re-

ligious services was not compulsory, principles of academic freedom prevailed, and student admission and faculty employment was not restricted to those who adhered to the faith of the related church. *Id.* at 755-58.

In contrast, Liberty's published policies required its faculty and students to attend church and chapel six times each week, its faculty and students were required to subscribe to Liberty's doctrine, and its faculty's academic freedom was circumscribed by Liberty's doctrinal statements. The testimony of witnesses that some of these policies were not enforced before October 1989 has little value because the instances of nonenforcement were not publicized to students or faculty.

The policies described earlier, as well as other Liberty policies, provide undisputed evidence of Liberty's "pervasive aim [of] equipping of young people for evangelistic ministry in the local church," as stated in its 1989-90 brochure entitled "Undergraduate Studies Liberty University." The pursuit of this aim makes Liberty "an institution in which religion is so pervasive that a substantial portion of its functions are subsumed in [its] religious mission." *Hunt*, 413 U.S. at 743. Thus, the proposed bond issue would violate the Establishment of Religion Clauses of the United States and Virginia Constitutions.

We conclude that the trial court was plainly wrong in validating the proposed bond issue. Accordingly, the judgment of the trial court will be reversed and final judgment invalidating the bond issue will be entered here.

*Reversed and final judgment.*

### APPENDIX

On October 5, 1989, Liberty's faculty handbook provided that

[f]or over twenty years Dr. Jerry Falwell and the people of Thomas Road Baptist Church have had a vision to provide young people with quality Christian education. The results of their vision have been the founding of four schools: Lynchburg Christian Academy, Liberty University, Institute of Biblical Studies, and Liberty Baptist Theological Seminary.

. . . .

In the context of the fundamentals of the historic Christian faith, students at Liberty University are provided principles and resources for spiritual, intellectual, emotional, and cultural growth and physical well-being which help them to:

1. Develop a Christian world view, enabling them to bring honor to the Lord Jesus Christ and to recognize God by studying his revelation in Scripture, nature, and history;

2. Communicate the views and values of the fundamental Christian faith to the world;

3. Develop skills that facilitate intellectual inquiry, creativity, and critical thinking;

4. Establish a disciplined life, manifested in a healthy integration of mental, physical, moral, and psychological well-being;

5. Understand the American democratic process, the free enterprise system, and their roles in maintaining the strength and viability of these traditions;

6. Acquire a sensitivity for the needs of society, thus preparing them to be mature, informed, and effective Christian leaders in a complex world and motivating them to serve God and mankind.

*Statement of Faith of Liberty University*

We affirm our belief in one God, infinite Spirit, creator, and sustainer of all things, who exists eternally in three persons, God the Father, God the Son, and God the Holy Spirit. These three are one in essence but distinct in person and function.

. . . .

We affirm that all things were created by God. Angels were created as ministering agents, though some, under the leadership of Satan, fell from their sinless state to become agents of evil. The universe was created in six historical days and is continuously sustained by God; thus it both reflects His glory and reveals His truth. Human beings were directly created, not evolved, in the very image of God. As reasoning moral

agents, they are responsible under God for understanding and governing themselves and the world.

We affirm that the Bible, both Old and New Testaments, though written by men, was supernaturally inspired by God so that all its words are the written true revelation of God; it is therefore inerrant in the originals and authoritative in all matters. It is to be understood by all through the illumination of the Holy Spirit, its meaning determined by the historical, grammatical, and literary use of the author's language, comparing Scripture with Scripture.

. . . .

We affirm that each person can be saved only through the work of Jesus Christ, through repentance of sin and by faith alone in Him as Savior. The believer is declared righteous, born again by the Holy Spirit, turned from sin, and assured of heaven.

*Faculty Purpose and Responsibilities*

The Faculty of Liberty University shall support the vision and purpose of the University's founder and shall be responsible for imparting to students a liberal education which is based upon principles of Biblical Christianity and which provides for academic, spiritual, personal and professional development.

CHAPEL. One of the unique aspects of Liberty University is the scriptural emphasis on the importance of the local church and the ministry of the Thomas Road Baptist Church in particular. Being vitally interested in the whole man, Liberty University not only provides physical education for the body and academics for the mind, but also church and chapel for spiritual needs.

Chapel is primarily for the practical application of spiritual truth to life. Chapel is designed to help students, staff and faculty to be "exhorted daily, lest any be hardened through the deceitfulness of sin" (Hebrews 3:13).

It is a time for the institution to come together to be refreshed, challenged and stirred to love the Lord Jesus and glorify God in our daily lives.

Chapel is conducted on Monday, Wednesday and Friday. All members of the faculty are to attend the chapel exercises and are asked to sit in their assigned area.

Academic freedom at Liberty University is defined as the privilege of a faculty member to teach his academic courses in the context of a Christian world view. A faculty member understands that he is coming into an institution in which Christian morality is accepted as the absolute rule of life and in which the Word of God is accepted as the absolute standard for all knowledge. A faculty member is employed because he is, and continues to be, in agreement with the University's purposes, doctrinal statement and organization.

## CHURCH MEMBERSHIP

Liberty University was formed under the auspices of Thomas Road Baptist Church and operates as one of the ministries of this local church. The belief of Liberty University is that the primary focus of God's work in the world is in the local church. The fundamental purpose of the local church is evangelism and edification referred to in Matthew 28:18-20 as the Great Commission. . . . Since the role of Liberty University is integral to Thomas Road Baptist Church in achieving the Great Commission, employees of Liberty University are required to be in agreement with the Church's purpose and method. In furtherance of that purpose and method, each Liberty University full-time non-temporary employee must become immediately on arrival at Lynchburg an active, attending, tithing member of record of Thomas Road Baptist Church.

### Enforcement Procedures for Policy Statement
*Regarding Thomas Road Baptist Church Membership*

Employees are further advised that effective with the Church fiscal year commencing July 1, 1989, data regarding individual employee membership, attendance, active service and tithing of record may be reviewed thereafter from time to time. . . . Employees who are found not to be in compliance with the Policy Statement shall receive a letter from the Pastor of TRBC [Thomas Road Baptist Church] . . . . Should a third review still reveal noncompliance, the employee shall be subject to appropriate employment discipline, including

the possibility of dismissal or nonrenewal. However, employees are advised that flagrant violation or violations of the *Policy Statement* may result in an employee's being subject to employment discipline, whether or not the first and second levels of review have occurred.

(Emphasis in original.)

## PART-TIME FACULTY

[P]art-time faculty *must* meet the same published qualifications, academically and spiritually, as do full-time faculty at Liberty University.

(Emphasis in original.)

## PUBLICATIONS

[I]t should be understood that the interest of a faculty member in publication must be balanced with the interest of Liberty University in maintaining its integrity as a higher education institution with a distinctive religious emphasis as contained in the doctrinal statement of the University.

On October 5, 1989, the official Liberty student handbook provided:

Each student will hold watchcare membership with the Thomas Road Baptist Church upon moving to the university. A student who has been a member of a local church for at least one (1) year prior to his application for enrollment at Liberty may leave his membership in his home church and fulfill his Christian Service assignment there with the written approval of the Christian Service Office. The spiritual vitality that has given birth to Liberty University emanates from the Thomas Road Baptist Church. The university is heavily supported by Thomas Road Baptist Church and is considered a ministry of the church. An important goal of the university is to impart to its students the enthusiasm for local-church evangelism which characterizes the ministry of Thomas Road Baptist Church. The Liberty "Way" is to become involved in the total ministries of Thomas Road Baptist

Church, to learn to do by doing, and to go out with a valid degree and HEARTS AFLAME to win a world for Jesus.

## CHURCH/CHAPEL/REQUIRED SOCIAL EVENTS

As an extension of the Thomas Road Baptist Church, Liberty University is a living application of the scriptural emphasis given to the local church. As a result, the ministry of Thomas Road Baptist Church serves as the hub of spiritual activity for Liberty University. As a dynamic institution vitally interested in the whole person, Liberty provides for physical, social, intellectual, and spiritual needs. The regular Thomas Road Baptist Church services, chapel, and the Sunday and Wednesday campus church services strive to meet spiritual needs.

Complementing the biblical instruction provided in the classroom is the biblical exhortation provided in chapel, which is primarily for the application of truth to life. Guest speakers, talented faculty and staff members, good music, student testimonies and timely messages from our chancellor and president help make chapel a refreshing and challenging time.

*Students are required to attend Sunday morning, Sunday evening and Wednesday evening services of the Thomas Road Baptist Church. Any student who desires to attend another church on a permanent basis must obtain permission from the Christian Service Office.* No student will be allowed to attend another church off campus with permanent permission unless he has completed his CSER/TRBC graduation requirements before seeking permission from the Christian Service Office. The Christian Service Office will not grant permission unless the student will be actively involved in a Christian Service assignment while attending the requested church. Dorm students must also attend all chapel sessions. Town students should see the section on off-campus living for chapel attendance requirements.

Because of the local church emphasis at Liberty, students have the opportunity to receive valuable, practical information through various required special events. There are no classes at those times, and students are required to attend the sessions.

(Emphasis in original.)

*Christian Service.* Christian Service involvement, teamed with academic achievement, comprises our "action-oriented" curriculum. Each student is required to be enrolled in an official Christian Service area for each semester he is enrolled in twelve (12) academic hours of credit or more (9 hours for graduate and seminary students). Students should expect to be involved a minimum of three (3) hours per week in their specific Christian Service assignments. These assignments are coordinated by the Vice President for Administrative Relations/Christian Service Director. The goal of the Christian Service program is to prepare the student spiritually and emotionally for a lifetime of practical Christian ministry.

All assignments are graded with a standard letter grade which is designed to reflect the student's moral and spiritual attitude. The recording of Christian Service assignments and grades is done in the same manner as a student's academic records. Christian Service grades become an official part of the student's transcript and are used to evaluate students for future recommendations and for graduation.

*Graduation Requirement.* If a student has been a member of a church in the Lynchburg area for at least one year prior to his application for enrollment at Liberty, he may fulfill his "church-related" Christian Service requirement through that church, but only if that church is in harmony with the doctrine and practice of the Thomas Road Baptist Church. Students in this category must secure the permission of the Christian Service Office each semester. Permission will be granted on the basis of the church's doctrinal harmony with TRBC; the student's academic, discipline, and Christian Service records; and the potential impact the student will have in that church.

Students of Liberty University represent the institution at all times. Any student who misrepresents the doctrinal or ethical positions of Liberty University or the Thomas Road Baptist Church will be subject to disciplinary action. For this reason, students must be careful to choose ministry opportunities which will not cause them to jeopardize the integrity of Liberty or the Thomas Road Baptist Church.