Present:  Hassell, C.J., Koontz, Kinser, Lemons, Goodwyn, and
Millette, JJ., and Lacy, S.J.


RUDOLPH DIGIACINTO

                                           OPINION BY
v.       Record No. 091934            JUSTICE S. BERNARD GOODWYN
                                           January 13, 2011
THE RECTOR AND VISITORS
OF GEORGE MASON UNIVERSITY

            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                     Michael P. McWeeny, Judge

     In this appeal, we consider whether 8 VAC § 35-60-20, a

George Mason University regulation governing the possession

of weapons on its campus, violates the Constitution of

Virginia or the United States Constitution.

                          I. Background

     Rudolph DiGiacinto filed a complaint seeking declaratory

judgment and injunctive relief against the Rector and

Visitors of George Mason University (collectively GMU) in the

Circuit Court of Fairfax County.  DiGiacinto petitioned the

circuit court to enjoin GMU from enforcing 8 VAC § 35-60-20

against him.  The regulation provides as follows:

> Possession or carrying of any weapon by any person,
> except a police officer, is prohibited on
> university property in academic buildings,
> administrative office buildings, student residence
> buildings, dining facilities, or while attending
> sporting, entertainment or educational events.
> Entry upon the aforementioned university property
> in violation of this prohibition is expressly
> forbidden.

8 VAC § 35-60-20.  DiGiacinto is not a student or employee of

GMU, but he visits and utilizes the university's resources, including its libraries. He desires to exercise his right to carry a firearm not only onto the GMU campus but also into the buildings and at the events enumerated in 8 VAC § 35-60-20. DiGiacinto argued in his complaint that 8 VAC § 35-60-20 violates his constitutional right to carry a firearm, that GMU lacks statutory authority to regulate firearms, and that the regulation conflicts with state law.

GMU filed a demurrer and plea of sovereign immunity in response to DiGiacinto's complaint. GMU contended that while DiGiacinto could properly pursue constitutional claims to openly carry a firearm on campus, sovereign immunity barred all claims based on Virginia's concealed firearms statute, Code § 18.2-308, and claims challenging GMU's regulatory authority. The circuit court granted the plea of sovereign immunity regarding the statutory concealed firearms claims, but ruled that DiGiacinto could proceed on the open carry of firearms claims. The parties stipulated to the facts asserted in their trial briefs and, after hearing the legal arguments, the circuit court took the matter under advisement.

The circuit court held that sovereign immunity barred a declaratory judgment proceeding concerning the scope of GMU's regulatory authority, but even if sovereign immunity did not

bar such a claim, GMU had the requisite authority to adopt 8 VAC § 35-60-20.  The circuit court also held that 8 VAC § 35-60-20 was constitutional under both the Constitution of Virginia and the United States Constitution.  The circuit court referred to District of Columbia v. Heller, 554 U.S. 570, 128 S.Ct. 2783 (2008), and the facts, as stipulated by the parties, in explaining its decision:

> Heller does not define what constitutes a sensitive place, but the Supreme Court lists as examples schools, [and] government buildings, "[p]resumably because possessing firearms in such places risks harm to great numbers of defenseless people; that is, children," [and] the buildings are important to government functioning.

> George Mason University notes there are 5,000 employees and 30,000 students enrolled, ranging from age 16 to even senior citizen age.  Three-hundred fifty-two in the incoming Freshman class will be under the age of 18 beginning this semester.  Approximately 50,000 elementary and high school students attend summer camps at the University.  They use these academic buildings, which are part of the regulation.  There is also a child development center in which approximately 130 student/employee children are enrolled [in the] preschool and . . . both the libraries and the Johnson Center . . . are regularly frequented by children ages two to five years old.

> High school graduations, athletic games, concerts and circus performances are just a few of the family activities occurring on campus.  The individuals who are part of this large community of interests clearly are the type of individuals whose safety concerns on a public university campus constitute a compelling State interest.  The

3

buildings and activities described in the regulations are those wherein the individuals gather: therefore, [they] are sensitive places as contemplated by [Heller] . . . .

I find the regulation is constitutional.

The circuit court dismissed DiGiacinto's complaint with prejudice and ordered that GMU's regulation be sustained. DiGiacinto appeals.

## II. Analysis

DiGiacinto argues that the circuit court erred in holding that GMU's regulation does not violate Article I, § 13 of the Constitution of Virginia and the Second and Fourteenth Amendments of the United States Constitution. He also contends that the circuit court erred in sustaining GMU's plea of sovereign immunity because Article I, § 14 of the Constitution of Virginia is a self-executing constitutional provision, and GMU did not have the authority to promulgate 8 VAC § 35-60-20.

DiGiacinto's argument that 8 VAC § 35-60-20 violates Article I, § 13 of the Constitution of Virginia and the Second and Fourteenth Amendments of the United States Constitution relies upon a primarily historical analysis. Describing 8 VAC § 35-60-20 as "effectually a total ban" on the right to bear arms on GMU's campus, DiGiacinto argues that the regulation is not narrowly tailored and violates the

4

historic understanding of the right to bear arms.

GMU responds that the right to keep and bear arms is not an absolute right.  It contends that, as recognized in Heller, the Second Amendment does not prevent the government from prohibiting firearms in sensitive places, which includes GMU's university buildings and widely attended university events.  GMU further argues that 8 VAC § 35-60-20 is narrowly tailored because it allows individuals to lawfully carry firearms on the open grounds of GMU's campus.

Arguments challenging the constitutionality of a statute or regulation are questions of law that this Court reviews de novo on appeal.  See Shivaee v. Commonwealth, 270 Va. 112, 119, 613 S.E.2d 570, 574 (2005).  The Second Amendment of the United States Constitution provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.

Like the United States Constitution, the Constitution of Virginia also protects the right to bear arms.  It states:

> That a well regulated militia, composed of the body
> of the people, trained to arms, is the proper,
> natural, and safe defense of a free state,
> therefore, the right of the people to keep and bear
> arms shall not be infringed; that standing armies,
> in time of peace, should be avoided as dangerous to
> liberty; and that in all cases the military should
> be under strict subordination to, and governed by,
> the civil power.

5

Va. Const. art. I, § 13.  The interpretation of Article I, § 13 of the Constitution of Virginia is an issue of first impression.  Whereas DiGiacinto contends that Article I, § 13 contains greater protections than afforded by the Second Amendment of the United States Constitution, GMU argues that, as relevant to this matter, the rights are co-extensive.  We agree with GMU.

As noted by Professor Howard, the Virginia General Assembly incorporated the specific language of the Second Amendment – "the right of the people to keep and bear arms shall not be infringed" – into the existing framework of Article I, § 13 of the Constitution of Virginia.  1 A.E. Dick Howard, Commentaries on the Constitution of Virginia 273 (1974).  As a result, the language in Article I, § 13 concerning the right to bear arms is "substantially identical to the rights founded in the Second Amendment."  Id. at 274.

This Court has stated that provisions of the Constitution of Virginia that are substantively similar to those in the United States Constitution will be afforded the same meaning.  See, e.g., Shivaee, 270 Va. at 119, 613 S.E.2d at 574 ("due process protections afforded under the Constitution of Virginia are co-extensive with those of the federal constitution"); Habel v. Industrial Development

6

Authority, 241 Va. 96, 100, 400 S.E.2d 516, 518 (1991) (federal construction of the Establishment Clause in the First Amendment "helpful and persuasive" in construing the analogous state constitutional provision).  We hold that the protection of the right to bear arms expressed in Article I, § 13 of the Constitution of Virginia is co-extensive with the rights provided by the Second Amendment of the United States Constitution, concerning all issues in the instant case.  Thus, for the purposes of this opinion, we analyze DiGiacinto's state constitutional rights and his federal constitutional rights concurrently.

The Supreme Court of the United States has held that the Second Amendment protects the right to carry and possess handguns in the home for self-defense.  Heller, 554 U.S. at ___, 128 S.Ct. at 2821-22; see also McDonald v. City of Chicago, 561 U.S. ___, ___, 130 S.Ct. at 3020, 3050 (2010) (plurality opinion), 3059 (Thomas, J., concurring).  Individual self-defense is "the central component of the right itself."  Heller, 554 U.S. at ___, 128 S.Ct. at 2801.  In McDonald, the Court further held that the Second Amendment applies to the states by way of the Fourteenth Amendment, 561 U.S. at ___, 130 S.Ct. at 3050 (plurality opinion), or the Privileges and Immunities Clause, id. at 3059 (Thomas, J., concurring).

The Supreme Court clearly stated in Heller, and a plurality of the Court reiterated in McDonald, that the right to carry a firearm is not unlimited.  In Heller, the Supreme Court specifically recognized that

> nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

Heller, 554 U.S. at ___, 128 S.Ct. at 2816-17.  The Supreme Court further explained its assertion by noting, "[w]e identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive." Id. at ___, 128 S.Ct. at 2817 n.26.

> The Supreme Court stated in McDonald:

> It is important to keep in mind that Heller, while striking down a law that prohibited the possession of handguns in the home, recognized that the right to keep and bear arms is not "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."  We made it clear in Heller that our holding did not cast doubt on such longstanding regulatory measures as "prohibitions on the possession of firearms by felons and the mentally ill," "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms."  We repeat those assurances here.

561 U.S. at ___, 130 S.Ct. at 3047 (plurality opinion) (internal citations omitted) (quoting Heller, 554 U.S. at

8

___, 128 S.Ct. at 2816-17).

Neither Heller nor McDonald casts doubt on laws or regulations restricting the carrying of firearms in sensitive places, such as schools and government buildings.  Indeed, such restrictions are presumptively legal.  Heller, 554 U.S. at ___, 128 S.Ct. at 2817 n.26.  In the instant case, GMU is a public educational institution and an agency of the Commonwealth.  George Mason University v. Floyd, 275 Va. 32, 37, 654 S.E.2d 556, 558 (2008); see also Code § 23-14 (classifying GMU as an educational institution, public body and "governmental instrumentalit[y] for the dissemination of education").  The Commonwealth owns GMU's real estate and personal property.  Code § 23-91.25.

It was stipulated at trial that GMU has 30,000 students enrolled ranging from age 16 to senior citizens, and that over 350 members of the incoming freshman class would be under the age of 18.  Also approximately 50,000 elementary and high school students attend summer camps at GMU and approximately 130 children attend the child study center preschool there.  All of these individuals use GMU's buildings and attend events on campus.  The fact that GMU is a school and that its buildings are owned by the government indicates that GMU is a "sensitive place."

Further, the statutory structure establishing GMU is

9

indicative of the General Assembly's recognition that it is a sensitive place, and it is also consistent with the traditional understanding of a university. Unlike a public street or park, a university traditionally has not been open to the general public, "but instead is an institute of higher learning that is devoted to its mission of public education." ACLU v. Mote, 423 F.3d 438, 444 (4th Cir. 2005). Moreover, parents who send their children to a university have a reasonable expectation that the university will maintain a campus free of foreseeable harm. See Schieszler v. Ferrum College, 236 F. Supp. 2d 602, 606-10 (W.D. Va. 2002); Hartman v. Bethany College, 778 F. Supp. 286, 291 (N.D. W. Va. 1991).

Recognizing the sensitivity of the university environment, the General Assembly established "a corporate body composed of the board of visitors of George Mason University" for the purpose of entrusting to that board the power to direct GMU's affairs. Code §§ 23-91.24, -91.29. Although the real estate and personal property comprising GMU is property of the Commonwealth, the General Assembly has provided that this property "shall be transferred to and be known and taken as standing in the name and under the control of the rector and visitors of George Mason University." Code § 23-91.25. Among the board of visitors' powers is to control and expend the university funds. Code § 23-91.29(a).

10

The board of visitors is also tasked with safeguarding the university's property and the people who use it by making "all needful rules and regulations concerning the University." Id. Such necessary rules and regulations include policies that promote safety on GMU's campus.

GMU promulgated 8 VAC § 35-60-20 to restrict the possession or carrying of weapons in its facilities or at university events by individuals other than police officers. The regulation does not impose a total ban of weapons on campus. Rather, the regulation is tailored, restricting weapons only in those places where people congregate and are most vulnerable – inside campus buildings and at campus events. Individuals may still carry or possess weapons on the open grounds of GMU, and in other places on campus not enumerated in the regulation. We hold that GMU is a sensitive place and that 8 VAC § 35-60-20 is constitutional and does not violate Article I, § 13 of the Constitution of Virginia or the Second Amendment of the federal Constitution.

DiGiacinto also argues that the circuit court erred in sustaining GMU's plea of sovereign immunity regarding his claim that GMU did not have authority to promulgate 8 VAC § 35-60-20 and that the regulation is inconsistent with state laws. He claims that GMU's promulgation of the regulation violates the uniform government provision contained in

11

Article I, § 14 of the Constitution of Virginia and that Article I, § 14 is a self-executing provision of the Constitution of Virginia not subject to the defense of sovereign immunity.

"[Sovereign immunity] is an established principle of sovereignty . . . that a sovereign State cannot be sued in its own courts . . . without its consent and permission." Gray v. Virginia Sec'y of Transp., 276 Va. 93, 101, 662 S.E.2d 66, 70 (2008) (citation and quotation marks omitted). "As a general rule, the Commonwealth is immune both from actions at law for damages and from suits in equity to restrain governmental action or to compel such action . . . . Sovereign immunity may also bar a declaratory judgment proceeding against the Commonwealth," Afzall v. Commonwealth, 273 Va. 226, 231, 639 S.E.2d 279, 282 (2007) (citations and quotation marks omitted), and does so for merely statutory claims.[1]

However, sovereign immunity does not preclude declaratory and injunctive relief claims based on self-executing provisions of the Constitution of Virginia or claims based on federal law. Gray, 276 Va. at 104-07, 662

---

[1] As an agency of the Commonwealth, GMU is entitled to the protection of sovereign immunity afforded to the state. See Rector & Visitors of the Univ. of Va. v. Carter, 267 Va.

12

S.E.2d at 71-73; see Idaho v. Coeur d'Alene Tribe, 521 U.S. 261, 317 & n.15 (1997) (Souter, J., joined by Stevens, Ginsburg, and Breyer, JJ., dissenting).  Thus, a plea of sovereign immunity cannot bar a claim by DiGiacinto for declaratory and injunctive relief, challenging GMU's authority to promulgate the regulation, based upon a self-executing provision of the Constitution of Virginia.  GMU claims that Article I, § 14 is not a self-executing provision of the Constitution of Virginia.  We disagree.

Article I, § 14 provides, "That the people have a right to uniform government; and, therefore, that no government separate from, or independent of, the government of Virginia, ought to be erected or established within the limits thereof."  This Court has articulated the following characteristics of a self-executing provision:

> A constitutional provision is self-executing when it expressly so declares.  See, e.g., Va. Const. art. I, § 8.  Even without benefit of such a declaration, constitutional provisions in bills of rights and those merely declaratory of common law are usually considered self-executing.  The same is true of provisions which specifically prohibit particular conduct.  Provisions of a Constitution of a negative character are generally, if not universally, construed to be self-executing.
>
> . . . .
>
> A constitutional provision may be said to be

---

242, 245, 591 S.E.2d 76, 78 (2004); James v. Jane, 221 Va. 43, 51, 282 S.E.2d 864, 868 (1980).

> self-executing if it supplies a sufficient rule by
> means of which the right given may be employed and
> protected, or the duty imposed may be enforced; and
> it is not self-executing when it merely indicates
> principles, without laying down rules by means of
> which those principles may be given the force of
> law.

Gray, 276 Va. at 103-04, 662 S.E.2d at 71-72 (internal quotation marks omitted) (quoting Robb v. Shockoe Slip Found., 228 Va. 678, 681-82, 324 S.E.2d 674, 676 (1985)). Moreover, "[i]f a constitutional provision is self-executing, no further legislation is required to make it operative." Id. at 103, 662 S.E.2d at 71 (citations omitted).

Article I, § 14 is within the Bill of Rights of the Constitution of Virginia. Further, the second portion of Article I, § 14 is stated in the negative, prohibiting any government "separate from, or independent of, the government of Virginia." This prohibition does not require further legislation to make it operative. Therefore, under the test articulated in Gray, we hold that Article I, § 14 is self-executing and therefore GMU does not have sovereign immunity as to claims arising under that provision.[2]

Despite our conclusion that Article I, § 14 is self-

---

[2] However, GMU's sovereign immunity has not been waived to the extent that DiGiacinto's declaratory judgment proceeding is premised on statutory and non-constitutional claims, and DiGiacinto has not challenged the propriety of the dismissal of all such claims by the circuit court, based upon GMU's plea of sovereign immunity.

executing, in order for DiGiacinto to prove a violation of that constitutional provision, he must establish that GMU, in promulgating 8 VAC § 35-60-20, functioned as a separate or independent government.  The history of Article I, § 14 indicates that its origin related to the boundary problems that the Commonwealth faced during its inception: "Virginians were concerned that some of the land companies might attempt to create a new state within the boundaries of Virginia in order to enhance their chances of successfully defending claims to vast amounts of unsettled and sparsely settled land."  1 A.E. Dick Howard, <u>Commentaries on the Constitution of Virginia</u> 279 (1974).  In the instant case, the argument that GMU, in promulgating 8 VAC § 35-60-20, was attempting to function as a separate government is without merit.  GMU had statutory authority under Code § 23-91.29 to make regulations concerning the university.  Therefore, GMU did not violate Article I, § 14.

Lastly, DiGiacinto argues that the General Assembly cannot acquiesce or delegate its powers away to GMU.  Code § 23-91.24 makes clear that GMU is "subject at all times to the control of the General Assembly."  The General Assembly did not improperly give or delegate its powers to GMU.  Therefore, we hold that this argument likewise lacks merit.

### III. Conclusion

Accordingly, for the reasons stated, we will affirm the circuit court's judgment.

<u>Affirmed.</u>