PRESENT:   All the Justices

CHARLES DANIELS,
D/B/A THE POKER PALACE
                                              OPINION BY
v.   Record No. 121242          JUSTICE S. BERNARD GOODWYN
                                           February 28, 2013
EARLE C. MOBLEY, IN HIS
OFFICIAL CAPACITY AS
COMMONWEALTH'S ATTORNEY
FOR THE CITY OF PORTSMOUTH


            FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                       Thomas S. Shadrick, Judge

      Charles P. Daniels, doing business as the Poker Palace,

appeals from a judgment entered by the Circuit Court of the

City of Portsmouth in a declaratory judgment action.  The

circuit court ruled that Daniels failed to establish that Texas

Hold 'Em poker is not illegal gambling under Code § 18.2-325

and that Code § 18.2-328 is unconstitutionally vague.  We

conclude that the request for declaratory judgment concerning

the legality of Texas Hold 'Em poker under Code § 18.2-325

failed to present a justiciable controversy over which the

circuit court could exercise jurisdiction and that the circuit

court did not err in determining Code § 18.2-328 to be

constitutionally valid.

                         Facts and Background

      Charles Daniels operated Boulevard Bingo, a charitable

bingo hall in the City of Portsmouth for twenty-two years.  In

2006, Daniels began hosting games of Texas Hold 'Em poker at

the hall for the Virginia Fraternal Order of Police. These

games were popular, and in 2010 Daniels leased and renovated

the space adjacent to the bingo hall and named it the Poker

Palace. Daniels hosted Texas Hold 'Em games and tournaments,

primarily for charity, in the Poker Palace.

On July 26, 2010, Earle C. Mobley, the Commonwealth's

Attorney for the City of Portsmouth, sent Daniels a letter

stating:

> After careful consideration, I have come to the
> conclusion that any and all poker games, or other
> forms of gambling not sanctioned by the Commonwealth
> of Virginia will be viewed by my office as illegal
> under Section 18.2-325 of the Code of Virginia, 1950
> as amended.
>
> I have notified the Portsmouth Police Department
> of my decision to prosecute any illegal gambling.
> Effective immediately, any violations of the statute
> will be subject to investigation and/or prosecuted.
> To avoid prosecution you must cease and desist any
> and all forms of illegal gambling, forthwith.

Daniels thereafter met with Mobley and decided to close the

Poker Palace to avoid prosecution.

Daniels filed a declaratory judgment action in the Circuit

Court of the City of Portsmouth to determine whether the game

of Texas Hold 'Em constitutes illegal gambling under Code

§ 18.2-325 and whether Code § 18.2-328 is facially

unconstitutional and should be found void for vagueness.

The case proceeded to a one-day bench trial in which

Daniels presented the testimony of (1) an expert in casino

2

math, Robert Hannum, (2) a math Ph.D., James Klinedinst, and (3) a world champion poker player, Gregory Raymer. At the conclusion of Daniels' case, Mobley made a motion to strike, which the circuit court took under advisement. Mobley declined to put on evidence and renewed his motion to strike. After a recess, the circuit court granted the motion to strike on the basis that "a game of Texas Hold 'Em for [a] single player can last 24 hours or it could last for one hand, and all the evidence indicates that the outcome of any one hand is uncertain; and so it is clear to me that this violates the statute as written; and, therefore, I will grant the motion to strike in regard to the claim that it is not illegal gambling under the statute [Code § 18.2-325]."[1]

Thereafter the circuit court heard argument on whether Code § 18.2-328[2] is unconstitutionally vague because of the

---

[1] Code § 18.2-325(1) states, in relevant part:

"Illegal gambling" means the making, placing or receipt of any bet or wager in the Commonwealth of money or other thing of value, made in exchange for a chance to win a prize, stake or other consideration or thing of value, dependent upon the result of any game, contest or any other event the outcome of which is uncertain or a matter of chance, whether such game, contest or event occurs or is to occur inside or outside the limits of the Commonwealth.

[2] Code § 18.2-328 states, in pertinent part, "The operator of an illegal gambling enterprise, activity or operation shall be guilty of a Class 6 felony." [1] Although the majority states "to the extent that Daniels had requested a

3

definition of "illegal gambling" stated in Code § 18.2-325(1). The circuit court held that the statute is not unconstitutionally vague because it provides fair notice and an individual of ordinary intelligence can discern its meaning. Daniels appeals.

We granted an appeal on the following assignments of error:

> 1.  The trial court erroneously held that Virginia's gambling statute, Va. Code § 18.2-325, can be violated whenever the outcome of a game is to any degree uncertain, as opposed to when chance predominates over skill in determining the outcome.

> 2.  The trial court erroneously held that the Texas Hold 'Em Poker games hosted at the Poker Palace qualify as gambling under Section 18.2-325 because the outcome of those games is uncertain. In making this error, the court misinterpreted both the term "uncertain," as noted in the first assignment of error, as well as the word "outcome."

> 3.  The trial court erroneously held that its broad reading of the gambling statute did not render the statute unconstitutionally vague.

Mobley presents the following assignments of cross-error:

> 1.  The circuit court erred by not granting the special plea and dismissing the action on the grounds that Mobley, a Constitutional officer, was immune

declaration of his rights, such declaration would be barred by sovereign immunity," the majority does not expressly hold that Daniels' claim regarding the legality of Texas Hold 'Em poker is barred by sovereign immunity. As explained below, the doctrine of sovereign immunity, when applicable, bars legal and equitable claims against the Commonwealth. Its application is not dependent on the character of the judgment but the nature of the claims asserted, such that the sovereign's immunity deprives the circuit court of subject matter jurisdiction.

from declaratory actions under the doctrine of sovereign immunity.

   2.  The circuit court erred by not granting the demurrer on the grounds that Daniels lacked standing to challenge a criminal statute under which he had not been charged.


Analysis

The declaratory judgment statute, Code § 8.01-184,

provides:

   In cases of actual controversy, circuit courts within the scope of their respective jurisdictions shall have power to make binding adjudications of right, whether or not consequential relief is, or at the time could be, claimed and no action or proceeding shall be open to objection on the ground that a judgment order or decree merely declaratory of right is prayed for.  Controversies involving the interpretation of deeds, wills, and other instruments of writing, statutes, municipal ordinances and other governmental regulations, may be so determined, and this enumeration does not exclude other instances of actual antagonistic assertion and denial of right.

Therefore, a circuit court cannot acquire jurisdiction

over a declaratory judgment action unless the proceeding

involves an actual adjudication of rights.  Charlottesville

Area Fitness Club Operators Ass'n v. Albemarle Cnty. Bd. of

Supervisors ("Charlottesville Fitness"), 285 Va. 87, 98, 737

S.E.2d 1, ___ (2013) ("The prerequisites for jurisdiction . . .

may be collectively referred to as the requirement of a

'justiciable controversy.' ").  A justiciable controversy, for

purposes of declaratory judgment, must involve "specific

5

adverse claims, based upon present rather than future or speculative facts."  City of Fairfax v. Shanklin, 205 Va. 227, 229, 135 S.E.2d 773, 775 (1964).

For a justiciable controversy to exist, it must be possible for the circuit court to render a decree yielding specific relief, such that the plaintiff's rights will be thereby affected.  Charlottesville Fitness, 285 Va. at 98, 737 S.E.2d at ___ (citing W. S. Carnes, Inc. v. Board of Supervisors, 252 Va. 377, 383, 478 S.E.2d 295, 299 (1996) and Erie Ins. Group v. Hughes, 240 Va. 165, 170, 393 S.E.2d 210, 212 (1990)).  "Thus, when the 'actual objective in the declaratory judgment proceeding [i]s a determination of [a] disputed issue rather than an adjudication of the parties' rights,' the case is not one for declaratory judgment."  Id. at 99, 737 S.E.2d at ___ (quoting Green v. Goodman-Gable-Gould Co., 268 Va. 102, 108, 597 S.E.2d 77, 81 (2004)); see, e.g., Board of Supervisors v. Town of Purcellville, 276 Va. 419, 435-36, 666 S.E.2d 512, 520 (2008) (allowing judgment for declaration of rights under written agreements to guide the parties in their future interactions).

It is beyond question that this Court may consider, sua sponte, whether a requisite justiciable controversy exists under the declaratory judgment statute, as the declaratory judgment statute was not intended to vest the courts with

6

authority to render advisory opinions.  See Martin v. Ziherl, 269 Va. 35, 40, 607 S.E.2d 367, 369 (2005); Shanklin, 205 Va. at 229-30, 135 S.E.2d at 775-76.  In his complaint, Daniels requested that the circuit court declare "that Texas Hold 'Em is not 'illegal gambling' under Code § 18.2-325."  The instant case presents a scenario in which the declaratory judgment petitioner seeks a declaration that a generalized activity does not violate a particular statute.  We conclude that such request concerns a determination of a disputed issue rather than a request for an adjudication of rights, and thus does not present a justiciable controversy.

The case of Williams v. Southern Bank of Norfolk, 203 Va. 657, 125 S.E.2d 803 (1962), is instructive to our determination.  The bank financed Williams' car dealership and took liens on the vehicles; when Williams sold a car, he was to pay off the lien.  Id. at 660, 125 S.E.2d at 805.  Williams sold eight vehicles without promptly paying off the liens, and the bank informed its attorney, who in turn reported this information, with the bank's consent, to the Commonwealth's attorney.  Id. at 660-61, 125 S.E.2d at 806.  Williams was charged with eleven counts of larceny, of which all but two were nolle prossed.  Id. at 661, 125 S.E.2d at 806.  Williams was found not guilty of those counts and threatened to bring actions for malicious prosecution against the bank.  Id. at

7

660, 125 S.E.2d at 805.  The bank filed a declaratory judgment action, seeking to prevent Williams from bringing his actions at law, and the circuit court ruled in its favor.  Id. at 658-59, 125 S.E.2d at 804-05.

This Court reversed, holding:

> The petition of [the] Bank does not ask for the construction of definite rights expressed in written instruments or statutes.  It alleges no controversy between the parties as to the right of [the] Bank to make a defense at law, based on the facts stated therein, to the threatened tort actions.  The answer of appellant challenges the verity of the allegations of fact.  The only controversy is, therefore, one of disputed fact, that is, whether [the] Bank made a full, correct and honest disclosure of all the material facts within its knowledge to its counsel and the Commonwealth's Attorney.  The determination of that issue rather than an adjudication of the rights of the parties was the real object of the proceeding, as shown by the allegations of the petition, the prayer thereof, and the conclusion reached by the chancellor.

Id. at 663, 125 S.E.2d at 807.

In his complaint, Daniels states that "Code § 18.2-325 defines as 'illegal gambling' only those games in which the outcome is a matter of chance.  Texas Hold 'Em does not fall within this definition because skill, rather than chance, is the primary determinate of success."  The stated controversy is, therefore, whether Texas Hold 'Em falls within the definition of illegal gambling.  This is posed as a factual inquiry.

As the matter was posed to the circuit court, whether the game of Texas Hold 'Em is illegal gambling pursuant to Code § 18.2-325 depends upon the manner in which it is played at the Poker Palace. The declaratory judgment action, concerning the legality of Texas Hold 'Em poker under Code § 18.2-325, requested the circuit court to make an adjudication of facts; it does not request an adjudication of Daniels' rights. The requested declaration cannot be obtained in the context of a declaratory judgment action. See id.; see also Schwartz v. O'Connell, 124 N.Y.S.2d 397, 399 (N.Y. Sup. Ct. 1953).

Additionally, the request concerning a declaration that Texas Hold 'Em poker was not illegal gambling concerned the interpretation of a criminal statute. The traditional perspective is that declaratory relief is inappropriate to restrain the sovereign in criminal matters. Kahaikupuna v. State, 124 P.3d 975, 980 (Haw. 2005); State ex rel. Edmisten v. Tucker, 323 S.E.2d 294, 309 (N.C. 1984) ("It is widely held that a declaratory judgment is not available to restrain enforcement of a criminal prosecution."). Declaratory judgment actions are not ordinarily available to collaterally impede threatened criminal prosecutions. See, e.g., Reed v. Littleton, 9 N.E.2d 814, 815-16 (N.Y. 1937) (equity will not ordinarily intervene to enjoin a criminal prosecution, unless: (1) the prosecution threatens irreparable injury; (2) the sole

9

question is one of law; and (3) the declaratory petitioner has a clear legal right to relief); Sun Oil Co. v. Director of Div. on Necessaries of Life, 163 N.E.2d 276, 279 (Mass. 1960) (approving use of declaratory judgment because petitioner was not simply seeking to avoid prosecution: the controversy affected its relationship to retail dealers and involved a matter of overarching business policy); Liberty Mut. Ins. Co. v. Jones, 130 S.W.2d 945, 953 (Mo. 1939) (permitting declaratory judgment proceeding to the extent of non-injunctive relief where criminal aspects of action seeking declaration that insurance adjusters were not practicing law were unimportant as compared to the general impact of the matter).

Declaratory relief with respect to criminal matters has been allowed in a number of jurisdictions, but only under limited exceptions. Kahaikupuna, 124 P.3d at 980-81 (declaratory relief possible, where, for instance, " 'the statute is malum prohibitum, it affects a continuing course of business, and a method of testing the statute was not in fact available . . . because the predecessors of the defendant refused to bring criminal proceedings' " (quoting Pacific Meat Co. v. Otagaki, 394 P.2d 618, 620 (Haw. 1964))); see also Zemel v. Rusk, 381 U.S. 1, 19 (1965) ("There are circumstances under which courts properly make exceptions to the general rule that equity will not interfere with the criminal process, by

10

entertaining actions for injunction or declaratory relief in advance of criminal prosecution."). The exceptions to the bar on declaratory judgment actions for the construction of criminal statutes are limited, rare and inapplicable regarding the requested determination of whether Texas Hold 'Em poker is illegal gambling as defined by Code § 18.2-325. See Reed, 9 N.E.2d at 815-16.

Daniels alleges Mobley threatened him with prosecution if the Poker Palace did not cease hosting Texas Hold 'Em games. Mobley is the Commonwealth's Attorney and is responsible for prosecuting crimes in the City of Portsmouth. The criminal aspects of Daniels' declaratory judgment action are dominating, and the unstated right Daniels seemingly wants to vindicate relates to criminal prosecution, rendering declaratory judgment inappropriate. See Jones, 130 S.W.2d at 953.

> The futility of resorting to [e]quity to determine whether certain or uncertain facts constitute crime is apparent when we consider the different measure of proof in criminal and civil cases. Should equity declare on disputed testimony or conflicting inferences by a fair preponderance of the evidence that a penal violation was proved, what would be the effect? None. It would not and could not be binding as res adjudicata or even as stare decisis in a subsequent prosecution where guilt must be established beyond a reasonable doubt. Should equity hold that no offense had been committed it would not be binding were the subsequent proof varied.

Reed, 9 N.E.2d at 817. Given the overwhelming criminal elements of the underlying dispute, resolution of the

11

declaratory judgment action would not impact any subsequent criminal proceeding.  Granting the requested declaration concerning the legality of Texas Hold 'Em poker would be merely an advisory opinion.

Additionally, to the extent that Daniels had requested a declaration of his rights, such declaration would be barred by sovereign immunity.  A resolution of the declaratory judgment action in a manner which adjudicated Daniels' rights would enjoin the Commonwealth from acting, in violation of the prohibition articulated in Azfall v. Commonwealth, 273 Va. 226, 231, 639 S.E.2d 279, 282 (2007) (" 'As a general rule, the Commonwealth is immune both from actions at law for damages and from suits in equity to restrain governmental action or to compel such action.' " (quoting Alliance to Save the Mattaponi v. Commonwealth, 270 Va. 423, 455, 621 S.E.2d 78, 96 (2005))).

Because the declaratory judgment action claim asserted by Daniels concerning the legality of Texas Hold 'Em poker does not present a justiciable controversy, the circuit court did not have authority to exercise jurisdiction concerning such claim.  Therefore, we will vacate the judgment concerning that claim and dismiss the claim.

The complaint in this case also asserted that "[section] 18.2-328 of the Code of Virginia is constitutionally void for vagueness."  This is a challenge to the constitutionality of a

statute based upon United States law or self-executing provisions of the Virginia Constitution; such a request for declaratory judgment presents a justiciable controversy.  See DiGiacinto v. Rector & Visitors of George Mason Univ., 281 Va. 127, 137, 704 S.E.2d 365, 371 (2011).  Thus, the circuit court had jurisdiction to consider Daniels' facial challenge to the constitutionality of Code § 18.2-328.

The circuit court ruled that Code § 18.2-328 was not unconstitutionally vague because it gives fair notice and an individual of ordinary intelligence can discern its meaning. Daniels asserts the circuit court "erroneously held that its broad reading of the gambling statute did not render the statute unconstitutionally vague."  Daniels argues that the circuit court interpreted Code § 18.2-325 so as to render the definition of illegal gambling in that statute unconstitutionally vague.  Daniels argues that application of a test of whether skill predominates over chance must be applied to the Code § 18.2-325 definition of what constitutes illegal gambling in order to preserve the statute's constitutionality.

In his complaint, Daniels claimed that Code § 18.2-328 was void for vagueness.  He did not claim that Code § 18.2-325 was void for vagueness.  He now concedes that Code § 18.2-328 would not be void for vagueness if skill is considered in determining whether one could be punished under that Code provision.

Code § 18.2-333 provides that

> Nothing in this article shall be construed to prevent any contest of speed or skill between men . . . where participants may receive prizes or different percentages of a purse, stake or premium dependent upon whether they win or lose or dependent upon their position or score at the end of such contest.

Therefore, even if the definition of illegal gambling in Code § 18.2-325 is "read" as not having an exception for games of skill, Code § 18.2-333 provides that skill be considered in determining whether Code § 18.2-328 has been violated. The ruling of the circuit court concerning Code § 18.2-325 could not have rendered an otherwise valid Code § 18.2-328 void for vagueness. Therefore, Daniels has demonstrated no error, and the circuit court's ruling regarding the constitutionality of Code § 18.2-328 is affirmed.

### Conclusion

The declaratory judgment claim asserted by Daniels concerning whether Texas Hold 'Em poker is illegal gambling, as defined in Code § 18.2-325, does not present a justiciable controversy, and the circuit court did not have authority under the declaratory judgment statute to exercise jurisdiction concerning such claim. The circuit court had the authority to rule upon the facial challenge to the constitutionality of Code § 18.2-328, and it did not err in doing so.

14

Accordingly, for the reasons stated, we vacate the judgment in part and affirm the judgment in part.

Vacated in part and
affirmed in part.

JUSTICE McCLANAHAN, concurring in part and dissenting in part.

Although I concur in the Court's decision vacating the circuit court's judgment as to Daniels' claim seeking a declaration that Texas Hold 'Em poker is not illegal gambling under Code § 18.2-325, I would hold that this claim is barred by the doctrine of sovereign immunity.[1]  Furthermore, because I believe Daniels lacks standing to challenge Code § 18.2-328 as unconstitutionally vague, I would reverse the circuit court's judgment that Code § 18.2-328 is constitutionally valid. Therefore, I dissent from the Court's decision upholding the circuit court's judgment on the constitutional claim.

Mobley filed a special plea in the circuit court asserting that Daniels' action against him is barred by sovereign

---

[1] Although the majority states "to the extent that Daniels had requested a declaration of his rights, such declaration would be barred by sovereign immunity," the majority does not expressly hold that Daniels' claim regarding the legality of Texas Hold 'Em poker is barred by sovereign immunity.  As explained below, the doctrine of sovereign immunity, when applicable, bars legal and equitable claims against the Commonwealth.  Its application is not dependent on the character of the judgment but the nature of the claims asserted, such that the sovereign's immunity deprives the circuit court of subject matter jurisdiction.

15

immunity since he is immune from suits for declaratory relief. On appeal, Mobley assigns cross-error to the circuit court's denial of his special plea. If Mobley is entitled to immunity as to either of the claims against him, the circuit court is deprived of subject matter jurisdiction over such claims. Seabolt v. County of Albemarle, 283 Va. 717, 719, 724 S.E.2d 715, 716 (2012); Doud v. Commonwealth, 282 Va. 317, 321, 717 S.E.2d 124, 126 (2011); Afzall v. Commonwealth, 273 Va. 226, 230, 639 S.E.2d 279, 281 (2007). "This is so because only the legislature acting in its policy-making capacity can abrogate the Commonwealth's sovereign immunity" and "vest the circuit court with jurisdiction." Commonwealth v. Luzik, 259 Va. 198, 206, 524 S.E.2d 871, 876-77 (2000). For this reason, Mobley's claim of sovereign immunity should be resolved by us at the outset. Seabolt, 283 Va. at 719, 724 S.E.2d at 716 ("We will first consider the county's claim of sovereign immunity because it is jurisdictional.").[2]

"It is an established principle of sovereignty, in all civilized nations, that a sovereign State cannot be sued in its

---

[2] In my view, the absence of a justiciable controversy would also deprive the circuit court of subject matter jurisdiction. However, in Charlottesville Area Fitness Club Operators Ass'n v. Albemarle Cnty. Bd. of Supervisors, 285 Va. 87, 113 n.1, ___ S.E.2d ___, ___ n.1 (2013) (McClanahan, J., concurring), the Court "decline[d] to classify the nature of the jurisdictional defect" when the claims asserted in a declaratory judgment action did not present a justiciable controversy.

16

own courts . . . without its consent and permission." Board of Public Works v. Gannt, 76 Va. 455, 461 (1882). Therefore, " 'the Commonwealth is immune both from actions at law for damages and from suits in equity to restrain governmental action or to compel such action . . . . Sovereign immunity may also bar a declaratory judgment proceeding against the Commonwealth,' and does so for merely statutory claims." DiGiacinto v. Rector & Visitors of George Mason Univ., 281 Va. 127, 137, 704 S.E.2d 365, 370-71 (2011) (citation omitted). "Only the General Assembly can determine as a matter of policy whether the Commonwealth's sovereign immunity should be abrogated with regard to a particular type of legal action." Ligon v. County of Goochland, 279 Va. 312, 316, 689 S.E.2d 666, 668-69 (2010).

"[B]ecause the Commonwealth can act only through individuals, the doctrine applies not only to the state, but also to certain government officials." Gray v. Virginia Sec'y of Transp., 276 Va. 93, 102, 662 S.E.2d 66, 70-71 (2008). These officials include "those who operate at the highest levels of the three branches of government" such as "[g]overnors, judges, members of state and local legislative bodies, and other high level governmental officials," as well as "other governmental officials of [a] lesser rank." Messina v. Burden, 228 Va. 301, 309, 321 S.E.2d 657, 661 (1984).

17

Mobley has been sued in his official capacity as Commonwealth's Attorney for the City of Portsmouth. As an attorney for the Commonwealth, Mobley is a constitutional officer whose duties are prescribed by law. Va. Const. art. VII, § 4; Doud, 282 Va. at 321, 717 S.E.2d at 126. He is primarily charged with enforcing criminal laws within his jurisdiction. Code §§ 15.2-528, 15.2-1626, 15.2-1627. Therefore, the immunity of the Commonwealth extends to Mobley.

Although Daniels posits that sovereign immunity does not bar actions seeking merely declaratory relief, his position mischaracterizes the nature of the doctrine and disregards essential justifications underlying our adherence to the doctrine.[3] Protection of the public purse is certainly "[o]ne of the most often repeated explanations for the rule of state immunity from suits in tort," but it is only "one of several purposes for the rule." Messina, 228 Va. at 307, 321 S.E.2d at 660.

> [T]he doctrine of sovereign immunity serves a multitude of purposes including but not limited to protecting the public purse, providing for smooth operation of government, eliminating public inconvenience and danger that might spring from officials being fearful to act, assuring that citizens will be willing to take public jobs, and preventing citizens from improperly

---

[3] On brief, Daniels contends that "[s]overeign immunity does not bar a declaratory judgment action that does not compel the government to act, restrain the government from acting, or affect the public purse."

18

> influencing the conduct of governmental affairs through the threat or use of vexatious litigation.

Id. at 308, 321 S.E.2d at 660.  Thus, "while maintenance of public funds is important, another equally important purpose of the rule is the orderly administration of government."  Id. Furthermore, the doctrine is not limited to suits in tort seeking money damages but extends to declaratory judgment actions seeking relief that "would have the effect of interfering with governmental functions."  Afzall, 273 Va. at 233, 639 S.E.2d at 283.

The primary objective of Daniels' action is to prevent enforcement of the illegal gambling statutes against him.  As Daniels states in his amended complaint, he brought his action against Mobley as a result of Mobley's "threat" of "prosecuting [Daniels] if he resumes poker games" at the Poker Palace. Daniels claims that since he does not seek an injunction to enjoin Mobley's prosecution of him but merely seeks "clarity regarding his rights," a ruling in his favor "would not encroach upon [Mobley's] lawful authority." While Daniels does not seek injunctive relief against Mobley, a ruling in his favor would have the same effect since Mobley would be precluded from prosecuting Daniels for violation of the illegal

19

gambling statutes in connection with Daniels' operation of Texas Hold 'Em poker games.[4]

In sum, preserving "the orderly administration of government" and "preventing citizens from improperly influencing the conduct of governmental affairs through the threat or use of vexatious litigation" compels application of sovereign immunity to Daniels' claim against Mobley. Messina, 228 Va. at 308, 321 S.E.2d at 660. Furthermore, it is clear the relief Daniels seeks "would have the effect of interfering with governmental functions." Afzall, 273 Va. at 233, 639 S.E.2d at 283. Therefore, I would conclude that Daniels' claim against Mobley seeking a declaration that Texas Hold 'Em poker is not illegal gambling is barred by the doctrine of sovereign immunity.[5] For this reason, I would hold the circuit court did

---

[4] Commonwealth's Attorneys are empowered to prosecute felonies and certain misdemeanors, not activities deemed legal. See Code § 15.2-1627.

[5] Because I would hold that sovereign immunity applies to this claim, I would not address the issue of whether Daniels' claim presents a justiciable controversy. Furthermore, one of the majority's primary reasons for its ruling that Daniels' claim does not present a justiciable controversy is that other jurisdictions have recognized that "declaratory relief is inappropriate to restrain the sovereign in criminal matters" and "impede criminal prosecution." In my view, it is unnecessary to import from other jurisdictions a new prerequisite for establishing a justiciable controversy in Virginia when Virginia's doctrine of sovereign immunity already protects the sovereign from suits to restrain the administration and enforcement of its criminal laws.

not have subject matter jurisdiction to adjudicate this claim. Id. at 234, 639 S.E.2d at 284.

Although sovereign immunity precludes Daniels' claim regarding the legality of Texas Hold 'Em, we have recognized that the doctrine will not deprive the court of subject matter jurisdiction over a declaratory judgment action where the claim is "based on self-executing provisions of the Constitution of Virginia or claims based on federal law." DiGiacinto, 281 Va. at 137, 704 S.E.2d at 371.[6] Daniels asserts that Code § 18.2-328 is unconstitutionally vague under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Since the substantive rights conferred by the Fourteenth Amendment are "self-executing," City of Boerne v. Flores, 521 U.S. 507, 524 (1997), sovereign immunity does not preclude Daniels' constitutional challenge of Code § 18.2-328.

Nevertheless, this does not end the inquiry into whether the circuit court may exercise jurisdiction over Daniels' claim because a party has no standing to make a facial attack upon a

---

[6] While the majority concludes Daniels' claim regarding the legality of Texas Hold 'Em poker does not present a justiciable controversy, it is unclear why this same ruling does not also apply to Daniels' claim that Code § 18.2-328 is unconstitutionally vague. DiGiancinto, relied upon by the majority, holds that "sovereign immunity does not preclude declaratory and injunctive relief claims based on self-executing provisions of the Constitution of Virginia or claims based on federal law." DiGiancinto, 281 Va. at 137, 704 S.E.2d at 371. This holding does not address whether Daniels' request presents a justiciable controversy.

21

penal statute when his claim of vagueness is based on due process overbreadth.[7]

> [F]or purposes of standing to make facial attacks, the Supreme Court makes a distinction between two separate concepts of overbreadth, viz., (a) due process overbreadth resulting from statutory language so vague that it could be selectively construed and enforced by police, prosecutors, and triers-of-fact to penalize persons not before the court, for conduct not before the court, without fair warning of the criminality of their conduct, and (b) First Amendment overbreadth resulting either from statutory language so vague it could "chill" the exercise of constitutionally protected speech or conduct, or from precise statutory language which expressly seeks to regulate protected speech . . . .

Stanley v. City of Norfolk, 218 Va. 504, 508, 237 S.E.2d 799, 801 (1977). "[W]hen overbreadth impinges upon First Amendment guarantees, a person accused under the statute has standing to make a facial attack, even though his own speech or conduct was not constitutionally protected." Id. at 508, 237 S.E.2d at 802. However, "when overbreadth has only due process implications," a person accused under the statute only has "standing to challenge the statute as applied to his own conduct." Id.

Daniels' constitutional challenge is not based upon First Amendment guarantees but due process overbreadth. Specifically, Daniels claims that Code § 18.2-328 "provides no

---

[7] Mobley also assigns cross-error to the circuit court's denial of his demurrer on the grounds that Daniels lacked standing to challenge Code § 18.2-328.

22

standard to differentiate between innocent conduct and prohibited conduct" thereby leaving to law enforcement officers, prosecutors, and courts "the decision of what is permitted and what is not."  He further contends that "[t]he term 'illegal gambling' fails to provide both adequate notice to ordinary people and minimal guidelines to govern law enforcement."  According to Daniels, the statute is unconstitutionally vague under the Due Process clause of the Fourteenth Amendment because it encourages arbitrary and discriminatory enforcement and fails to provide people of ordinary intelligence fair notice of what the law prohibits. Thus, because Daniels "seeks to make a facial challenge based upon due process overbreadth," he "is without standing to make such a challenge."  Stanley, 218 Va. at 509, 237 S.E.2d at 802.[8]

---

[8] Even if this Court treated Daniels' claim as an "as-applied" challenge and judged it on that basis, see Motley v. Virginia State Bar, 260 Va. 243, 247, 536 S.E.2d 97, 99 (2000), Daniels would not have standing.  A penal statute is not applied until the challenging party has been convicted or cited for violation of the statute.  See Tanner v. City of Va. Beach, 277 Va. 432, 435–36, 674 S.E.2d 848, 850 (2009) (noise ordinance held unconstitutionally vague after accused was written multiple citations for violating the ordinance); Gray, 260 Va. at 681, 537 S.E.2d at 865 (deciding vague-as-applied challenge to the Virginia statute prohibiting unregistered possession of a firearm silencer on appeal from accused's conviction under the statute); Woodfin v. Commonwealth, 236 Va. 89, 92, 372 S.E.2d 377, 379 (1988) (deciding a vague-as-applied challenge to the Virginia capital murder statute on appeal from accused's conviction under the statute); cf. City of Chicago v. Morales, 527 U.S. 41, 50 (1999) (deciding a vague-as-applied challenge where defendants were convicted under the statute);

23

Accordingly, this claim does not present a justiciable controversy over which the circuit court had "authority to exercise jurisdiction."  Charlottesville Fitness, 285 Va. at 106, ___ S.E.2d at ___.

For these reasons, I would vacate the circuit court's judgment in its entirety and dismiss Daniels' action against Mobley.

Kolender v. Lawson, 461 U.S. 352, 354 (1983) (same); Coates v. City of Cincinnati, 402 U.S. 611, 612 (1971) (same).